n (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Michael T. Mason | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 C 2434 | **DATE** | 12/5/2002 |
| **CASE TITLE** | Alsip vs. Barnhart | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry]  Enter Memorandum Opinion and Order.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | 3 number of notices | Document Number |
|---|---|---|---|---|
| | No notices required. | | | |
| ✓ | Notices mailed by judge's staff. | | DEC 6 - 2002 date docketed | |
| | Notified counsel by telephone. | | | 14 |
| | Docketing to mail notices. | | docketing deputy initials | |
| | Mail AO 450 form. | U.S. DISTRICT COURT CLERK | 12/5/2002 | |
| | Copy to judge/magistrate judge. | | date mailed notice | |
| MF | courtroom deputy's initials | 02 DEC -5 PM 2:00 Date/time received in central Clerk's Office | MF mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION



DEC 6 - 2002

| | |
|---|---|
| GARY D. ALSIP, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 02 C 2434 |
| v. ) | |
| ) | |
| JO ANNE BARNHART, Commissioner ) | Mag. Judge Mason |
| of Social Security, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

Michael T. Mason, United States Magistrate Judge:

The plaintiff, Gary Alsip, has brought a motion for summary judgment seeking judicial review of the final decision of defendant Barnhart, who denied plaintiff's claim for disability insurance benefits ("DIB") and Supplemental Security Income ("SSI") benefits under the Social Security Act ("Act") 42 U.S.C. § 416, 423, 1381a. Defendant has filed a cross motion for summary judgment asking that we uphold the decision of the Administrative Law Judge ("ALJ") who originally heard the case, and the Appeals Board which reviewed the ALJ's decision. We have jurisdiction to hear this matter pursuant to 42 U.S.C. § 405(g) and for the following reasons we affirm the decision of the Commissioner.

Procedural History

Alsip filed for DIB and SSI on January 22, 1999 asking for a period of disability dating back to March 3, 1998. (R. 124). His claims were denied initially and then again after his request for reconsideration. (R. 101). On April 5, 2000, plaintiff participated in a hearing before ALJ Michael Bernstein regarding the denial

/4

of his claims for benefits. (R. 30). On July 18, 2000, Bernstein issued a written opinion denying his claim. (R. 17-25). In his opinion, Bernstein applied the five step sequential evaluation process required by 20 C.F.R. 404.1520 and 416.920 (R. 18), and concluded that Alsip was not disabled pursuant to the Social Security guidelines, and thus not entitled to benefits. (R. 24-25). Alsip then appealed the decision to the Appeals Council, which denied his request on January 30, 2002. (R. 8-9). Thus, the ALJ's decision became the final decision of the Commissioner of Social Security. See Zurawski v. Halter, 245 F.3d 881 (7th Cir. 2001).

Plaintiff's Testimony

At the time of the hearing before the ALJ, Alsip was a forty-four year old man with a tenth grade education and a GED that he received in August, 1991. (R. 45). During the hearing, he testified to a variety of medical problems, primarily relating to complaints of a so-called back laminectomy. (R. 176). This is a back ailment in which pain starts in the middle of his back and then radiates down through his left buttocks. (R. 54). As a result, he cannot bend or stoop and is in pain after sitting. (R. 176). In addition to the back pain, Alsip has trouble with his right knee. He has had his knee scoped twice[1] and has bone spurs and osteophytes. (R. 176). The pain in his knee is usually at a level of three, on a scale of ten, but the pain increases to a level of seven when his knee swells. (R. 55). Further, Alsip lost 20% of the strength in his right hand, his dominant hand, when he had a bone removed in 1982 because it was shattered and chipped. (R. 57, 176). In addition to these problems, Alsip

---

[1] The parties do not define what "scoped" means, but we assume that it refers to arthroscopic knee surgery.

2

testified that he also suffers from sleep apnea (R. 53), pancreatitis (R. 71), hypertension (R. 71), depression (R. 72), and ulcerative colitis, which causes him to soil himself once or twice a month. (R. 67).

With these problems, Alsip stated that he finds it difficult to find, and keep, employment. His last full job was at J.C. Whitney in 1998 performing assembly work in a factory. (R. 67). Since then, he has sought help in finding work from Manpower, a temporary agency. (R. 47). He worked briefly at Illinois Tool Works as a molding machine loader, but then had to leave after a few days because of the bending involved. (R. 48). He then worked in Melwood at a resort delivering linen (R. 48), but this job also ended abruptly when he had to go to Urgent Care for the pain in his back. (R. 49).

Currently, he is only able to walk about two blocks (R. 58) and stand for maybe 15 or 20 minutes before the pain becomes too intense. (R. 59). Additionally, he can only sit for 45 minutes before he has to get up and walk around. (R. 60). He is able to do short errands around town, such as getting gas, going to the store, driving his mother to doctor's appointments and driving his friend to Wal-Mart. (R. 61, 64). On a normal day, he gets up and sits in his ergonomic chair with a stimulator for about 40 minutes. (R. 63). He then gets dressed using a sock-puller and wears slip-on shoes. (R. 62). After dressing, he attempts to do minor housework such as washing the dishes, polishing the table and using the self-propelled vacuum. (R. 63-64). He also watches a lot of television because reading gives him a headache. (R. 66). For a hobby, he likes to fish and had taken a fishing trip two weeks before his ALJ hearing. (R. 62).

3

Plaintiff's Medical Examinations

Alsip's medical problems really began in 1988 when he started to suffer from allegedly debilitating back pain. On August 17, 1993, Judge Brudnage of Oakbrook found Alsip to be disabled from August 15, 1990 to February 16, 1993. (R. 176). In 1993, he was told he could do light work. However, he did not return to work until 1997. In March, 1998, he was laid off because he again started to experience back problems at work. (R. 176).

On April 20, 1998, Lloyd Flatt, M.D. performed an open MRI of the brain with gadolinium on Alsip. (R. 202). Dr. Flatt found the MRI unremarkable. (R. 202). On May 20, 1998, Dr. Flatt performed an MRI/CT scan for the back and head on Alsip. (R. 138). At that time, Alsip was given prescriptions and referred to a different doctor to monitor his blood pressure. (R. 138). On June 1, 1998, Dr. Flatt performed an open MRI lumbar on Alsip's back. (R. 201). The doctor's impression was that "there are no definite abnormalities suspected on this MRI of the lumbar vertebral column." (R. 201).

In June 1998, Alsip began to see Michael Malek, M.D., for his back problems. (R. 138). On July 23, 1998, Alsip was admitted to St. Joseph Medical Center where Dr. Malek performed surgery on Alsip's back. (R. 203). The operation was for a "L5-S1 Laminectomy, Medical Facetectomy, lateral recess decompression, nerve root decompression, posterior segmental instrumentation with VST titanium plate and screw instrumentation, posterolateral fusion with allograft and ssep monitoring." (R. 203). Basically, Alsip received lumbar fusion of the L5-S1 vertebrae with VST titanium plates and screw instrumentation. (R. 138). During the surgery, it was

4

decided not to place a posterior interbody fusion because there was no disc herniation and the conjoint[2] nerve root would make it unusually risky. (R. 206). However, at the discharge date on July 27, 1998, Dr. Malek indicated that the operation was done without difficulty and that Alsip did very well postoperatively. (R. 203). Alsip was discharged with a leg brace and his pain was deemed to be under control. (R. 203). At that time, Dr. Malek prescribed Elavil to help with neuropathic trouble, Vicodin for back pain, and Valium for muscle spasms. (R. 141). Due to the surgery, Dr. Malek issued a note on October 26, 1998 recommending that Alsip be found temporarily disabled starting on July 17, 1998, the date of his posterior lumbar fusion surgery, for approximately the next 12 months. (R. 242). In October, 1998, Dr. Malek was pleased with how Alsip was doing and noted that the only complaint by Alsip post-surgery was that the brace was cutting into his groin and that he still had some pain at the incision area. (R. 243).

While he was being monitored for his back problems, Alsip saw Richard Rotnicki, M.D., in November, 1998 for his ulcerative colitis. (R. 139). On November 19, 1998, a colonoscopy was performed on Alsip. (R. 223). He had a biopsy on the following areas: the ascending colon, the transverse colon and the left colon. (R. 223). The biopsy of the left colon showed "ulcerated inflammatory process consistent with the clinical diagnosis of ulcerative colitis." (R. 224). Dr. Rotnicki stated that Alsip has active left-side disease and that "he would probably benefit best from Rowasa enemas for better disease control at the present time." (R. 225). Dr.

---

[2] The doctor's notes from the surgery refer to both a "conjoined" nerve root and a "conjoint" nerve root. We will refer throughout this opinion to Alsip having a "conjoint" nerve root.

5

Rotnicki prescribed sulfasalazine and folic acid for the colitis. (R. 141).

On November 30, 1998, Alsip was again examined by Dr. Malek who indicated that the alignment and position of the bones in his back appeared to be satisfactory. (R. 222). On December 7, 1998, Dr. Malek had another follow up appointment with Alsip 4-1/2 months after surgery. (R. 241). Dr. Malek was pleased with the results of surgery and believed that in another month, they could begin tapering off use of the brace and send Alsip to a rehabilitation program. (R. 241).

On January 7, 1999, Alsip was seen by internist Rito Maningo, M.D., who evaluated Alsip at the request of the Bureau of Disability Determination Services. (R. 257). She found that "there was some improvement of the back pains after the surgery, but not completely relieved." (R. 261). She noted that Alsip's "gait was abnormal, with pain on the lower back and when trying to lift his legs on both side abruptly to make steps." (R. 261). Specifically, she found the degree of difficulty in getting on and off the exam table, walking on his heels and toes and squatting and rising to be mildly difficult. (R. 260). She further noted that the "range of motions of the lumbar spine was limited because of the claimant's pain whenever the range of motion is done." (R. 260). In regards to Alsip's ability to use his hands, she found that the "claimant is right-handed and the hand grasp is 5/5 on each side, where 5 is strong." (R. 259).

On July 22, 1999, after being involved daily in "Work Hardening" for one full month, it was determined by the therapists at Work Hardening that Alsip had

achieved maximum benefits out of Work Hardening activities.[3] (R. 280). At that time, he was able to perform at a "light" level of physical demand. (R. 280). His primary obstacle to returning to work is that he was "unable to lift floor to waist level 50 pounds due to low back and right knee pain." (R. 276).

During a follow-up appointment with Dr. Malek on October 1, 1999, Alsip complained of problems with his back. (R. 315). Dr. Malek ascribed the problems to "probably related to underlying arthritis." (R. 315).

On October 26, 1999, Alsip was diagnosed with sleep apnea. (R. 293). He was then fitted with a C-PAP machine. (R. 293). On December 30, 1999, Alsip reported that he was experiencing relief from the sleep apnea and that his headaches were minimized. (R. 291).

On November 20, 2000, Alsip visited Dr. Dorning complaining of knee swelling. (R. 397). He received a cortisone injection in his right knee on December 12, 2000. On July 24, 2001, Alsip again saw Dr. Dorning for his knee pain and was diagnosed with mild effusion and erythema. (R. 373).

Vocational Expert

At the hearing before the ALJ, vocational expert ("VE") Jennie Chin testified. She was asked to address the work capabilities of someone of Alsip's age, education, and work experience who was limited to a full range of light work, and simple repetitive tasks with an opportunity to sit for five minutes an hour while lifting no more than 10 pounds. (R. 79). The VE opined that given these limitations, Alsip

---

[3] Work Hardening is a physical therapy program recommended by Dr. Malek.

7

would not be able to perform his past relevant work. (R. 79).

When questioned about what work Alsip could potentially do, the VE hypothesized that someone with Alsip's medical limitations, in a sedentary position, could hold the positions of cashier (6,136 positions) and assembler (5,337 positions). (R. 80). However, if the position was not limited to sedentary work, then cleaner, with 8,590 positions, would be added to the list. (R. 80). The VE also opined that if Alsip had some attention and concentration problems, the positions that require individuals to work with money would not accept any errors, but that cleaning and assembling positions would accept some errors, but not for a prolonged period of time. (R. 82-84).

Standard of Review

The inquiry the Court must undertake when asked to review an ALJ and Commission decision is whether that decision is supported by substantial evidence. Act section 405(g); see, e.g., Kendrick v. Shalala, 998 F.2d 455, 458 (7th Cir. 1993). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971). If the record contains such support, the court must affirm the decision of the Commissioner unless he has made an error of law. Veal v. Bowen, 833 F.2d 693, 696 (7th Cir. 1987). A reviewing court may not decide facts anew, reweigh the evidence, or substitute its judgment for that of the ALJ. Powers v. Apfel, 207 F.3d 431, 434 (7th Cir. 2000). This court may not reconsider credibility determinations by the ALJ. Prince v. Sullivan, 933 F.2d 598, 601-02 (7th Cir. 1991). Thus, a plaintiff's proof must show that no reasonable person, based upon the record as a whole,

could have found as the Commissioner did. *Rucker v. Shalala*, 894 F.Supp. 1209, 1213-14 (S.D. Ind. 1995).

Legal Analysis

First, Alsip argues that the ALJ erred in not finding claimant's allegation of disability credible. Specifically, he contends that the ALJ erred in not considering the full effect of the nerve root anomaly in contributing to the plaintiff's severe and material impairment. Second, Alsip argues that the ALJ's actions, findings and conclusions are not supported by substantial evidence. Third, Alsip argues that the ALJ erred in stating that a person doing sedentary work can have the option to stand for short intervals and that there is tolerance for diminution of attention and concentration.

To determine whether an adult claimant is disabled under the Act and thus entitled to benefits, the ALJ must undertake a five-step process which assesses whether the individual is unable to engage in any substantial gainful activity by reason of a medically determinable physical or mental ailment. Furthermore, an individual is considered disabled only if he is neither able to perform any of his previous work or any other work existing in significant numbers in the national economy. In making his determination, the ALJ applied the standard five-step process set forth in the regulations, which required him to evaluate, in sequence:

(1) Is the claimant presently unemployed?
(2) Is the claimant's impairment or combination of impairments severe?
(3) Do his or her impairments meet or exceed any of the specific impairments listed in 20 C.F.R. Pt. 404, Subpt. P., App. 1 which the Secretary acknowledges to be conclusively disabling?
(4) If the impairment has not been listed by the Secretary as conclusively disabling, given the claimant's residual function capacity, is the

9

> claimant unable to perform his or her past relevant work?
>
> (5) Is the claimant unable to perform any other work in the national economy given his or her age, education or work experience?
>
> *Ward*, 2000 WL 1029170 at *4 citing, Reg. § 416.920(a)-(f); *Young v. Secretary of Health & Human Servs.*, 957 F.2d 386, 389 (7th Cir. 1992).

Under the five part sequential analysis, "[a]n affirmative answer leads to either the next step, or on Steps 3 and 5, to a finding that the claimant is disabled. A negative answer at any point, other than Step 3, ends the inquiry and leads to a finding that the claimant is disabled." *Zalewski v. Heck*, 760 F.2d 160, 162 n.2 (7th Cir. 1985). Alsip's argument focuses on step five.

In undertaking the five step process, the ALJ first determined that Alsip was not gainfully employed at any time relevant to this decision. (R. 18). At the second step, the ALJ determined that Alsip has "degenerative disc disease, status post right knee injury, and depression." (R. 18). He found that these impairments combined to more than minimally impact on the claimant's ability to perform basic work activity. (R. 18). At the third step, the ALJ found that Alsip did not have a specific impairment that the Secretary acknowledges to be conclusively disabling. (R. 18). At the fourth step, the ALJ stated that in order to evaluate the impact of the impairment, a conclusion must first be reached with respect to the claimant's residual functional capacity - i.e., the ability to perform work-related activities which the claimant retains despite his impairments. (R. 18-19). The ALJ fully evaluated Alsip's work and medical history and found that Alsip could not perform his past relevant work. (R. 19-22). Finally, at step five, the ALJ found that Alsip retained the capacity for limited sedentary work and therefore, was not disabled. (R. 23).

The plaintiff first argues that the ALJ erred in not finding claimant's allegation of disability credible, specifically, by not considering the effect of his nerve root anomaly. It is true that the ALJ did not specifically mention the fact that Dr.Malek's notes indicated that, during the surgery, it was "decided not to place a posterior interbody fusion because there was no disc herniation and the conjoint nerve root would make it unusually risky." (R. 206). However, the ALJ extensively outlined Alsip's surgery, the results of that surgery, and his abilities following the surgery even without the interbody fusion. (R. 19). While Alsip's doctors did not perform one planned aspect of the surgery because of the conjoint nerve root, they did complete all other aspects of the surgery, and indeed, the doctor's notes indicate that one reason the interbody fusion was not attempted was because Alsip *did not* have a disc herniation. Therefore, when the ALJ took into consideration the doctor's evaluation of the plaintiff post-surgery, and the plaintiff's abilities after physical therapy, he built a "bridge from the evidence to the conclusion." *See Godbey v. Apfel*, 238 F.3d 803, 807 (7th Cir. 2000).

Second, Alsip argues that the ALJ's actions, findings and conclusions are not supported by substantial evidence. A review of the ALJ decision shows that the ALJ took into consideration all factors and did not ignore evidence that supported an opposite conclusion. If the determination is supported by substantial evidence, we must uphold it, even if there is also conflicting evidence. *See, Walker v. Bowen*, 834 F.2d 635,640 (7th Cir. 1987). The ALJ indicated that Alsip's pain reaches 5 or 7 on a bad day, that he must crawl up stairs, that he can stand for only 15 to 20 minutes before the pain gets too much for him, and that he can carry a gallon of milk if he

11

does not have to carry it too far. (R. 20). The ALJ also noted that he does some housework such as the dishes, but that he cannot do this everyday and that his wife has to carry out the garbage. (R. 20). The ALJ also stated that Alsip's wife testified that he had problems doing practically everything and that he cried a couple of times a week. (R. 20). This recitation of part of the ALJ's opinion shows that he evaluated evidence that supported both his conclusion as well as the opposite determination, namely, that Alsip could not work. In fact, the ALJ even disagreed with the state agency consultants that found that Alsip could perform light work. (R. 21). The ALJ instead concluded that, due to the "knee injury and pain complaints, that the claimant did not retain the ability for light work described in the therapy notes, but it is apparent from his lifestyle that he can perform sedentary work if he has the opportunity to stand for short intervals." (R. 21). Therefore, the ALJ's findings and conclusions were supported by substantial evidence and he gave proper weight to all of the evidence in reaching his conclusion.

Third, Alsip argues that the ALJ erred in stating that a person doing sedentary work can have the option to stand for short intervals and that there is tolerance for diminution of attention and concentration. However, this is not an accurate portrayal of what the ALJ found. First, the ALJ recited the vocational expert's data as to what positions a hypothetical claimant could hold if they could perform a full range of sedentary work. (R. 22). These jobs included work as a cashier, assembler and clerical worker. (R. 22). The ALJ then noted that the positions of assembler and cashier were sensitive to error rate and that if a claimant had a significant problem with attention and concentration, that accuracy would suffer and the positions would

12

not be feasible options. (R. 22). However, the ALJ noted that he was not convinced that the claimant would experience these problems. (R. 22). In support of this contention, the ALJ noted that Alsip was able to drive short distances, that he could fish (in fact, he had gone on a fishing trip two weeks before the hearing), and that he could perform limited household tasks. (R. 22). The ALJ also noted that, while Alsip complained of depression, he was not taking significant psycho tropic drugs and that he had a C-PAP machine to control his sleep apnea. (R. 22). After evaluating all of these factors, the ALJ concluded that Alsip could perform *limited* sedentary work since at least January of 1999. (R. 23).

Therefore, in the limited role this Court has in evaluating the decision of an ALJ, the plaintiff did not show that a reasonable person, based upon the record as a whole, could not have found as the ALJ found. The ALJ provided a basis for his opinion that was consistent with the testimony and documents that were provided. Therefore, this Court AFFIRMS the decision of the Commissioner. It is so ordered.

ENTER:

MICHAEL T. MASON
United States Magistrate Judge

Dated: December 5, 2002